UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JERRY ELLIS                                          CIVIL ACTION

VERSUS                                               NO. 09-3061

ROBERT CROWE ET AL.                                  SECTION "I" (2)


# REPORT AND RECOMMENDATION

Plaintiff, Jerry Ellis, is a prisoner currently incarcerated as part of a work release program at the East Baton Rouge Parish Jail in Baton Rouge, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against four defendants, Washington Parish Sheriff Robert Crowe; Demille Topps, warden of the Washington Parish Jail; Wallace Cummings, assistant warden of the Washington Parish Jail; and Deputy Terrell Brumfield. Ellis asserts numerous kinds of claims against the defendants, all arising from his incarceration in the Washington Parish Jail for a period of about eight months, from October 3, 2008 through May 19, 2009. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On July 7, 2009, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Pete Matthews, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that, at the time of the conference, he was incarcerated in the Caldwell Correctional Facility based upon the revocation of his parole in May 2009 for his prior conviction on a simple burglary charge, for which he is serving a sentence of five years in prison. He confirmed that the claims he makes in this case all arise from a period of time during which he was incarcerated in the Washington Parish Jail from October 3, 2008 through May 19, 2009, following his arrest for driving without a driver's license and possession of Schedule II narcotics.

As to his first claim, that Warden Topps "authorizes corporal punishment," Record Doc. No. 1 (Complaint at ¶ IV), Ellis testified that on one occasion a number of inmates were taken from the jail to court, and some of the inmates did not conduct themselves in an orderly fashion. Ellis stated that, although the warden and his deputies knew which inmates had misbehaved, they decided to punish <u>all</u> inmates in the jail, including those like Ellis who had not gone to court that day or had not misbehaved. Plaintiff described the punishment as "everybody was on lockdown and couldn't take showers or nothing." Ellis referred to that as "corporal punishment" because he had done nothing to merit punishment. "I'm not aware of what's going on or what they done [sic] over there, but they come back and everybody gets punished for it. I don't think that I should have got punished. I hadn't did [sic] anything," he said.

Ellis described the punishment he received as "lockdown–they lock you down in your cells and you can't come out for nothing [sic] at all, . . . that's where you get fed at [sic], you stay in there, and that's where you stay until they decide to let you out or whatever."  He testified that he was in lockdown for about one and one-half weeks, which meant he could not watch television, use the telephone, exercise or do anything, except that he was permitted to leave his cell three times during that period to shower. He alleged that these actions constituted both corporal punishment and unlawful disciplinary action.  He stated that this incident occurred sometime in October to November 2008, when other inmates–not he–were taken to court and misbehaved.  Ellis testified that he received no hearing and no written statement of the charge against him before he was placed in lockdown along with the other inmates.

As to his second claim, that the law library at the Washington Parish Jail was inadequate, plaintiff's written submissions alleged that the jail's library is "outdated," with "no legal assistance to help the illiterate inmates" and that "[i]t may take an inmate two to three weeks to get a book from the Law Library, who have deadlines in the court to file certain writs."  Id.  (Complaint, Attachment at ¶ 2).  Ellis testified that the library at the jail "should be there to help us review our cases and look into it to see what we can do for ourselves."  He asserted that a legal assistant or some other person should be in the library to help the inmates use it.  Ellis testified that, during his eight months in the Washington Parish Jail, he needed to look up what penalties his crime carried, but only

outdated books were available for him to use. He testified that he was represented by a lawyer in connection with his criminal charges, but he alleged that his attorney, Mr. Yazbek, did not provide him with adequate assistance and that he wanted to do some legal research of his own. His testimony was unresponsive when asked whether there were any papers that he might have filed in connection with his criminal proceedings that his lawyer could not have filed for him, except to say that his lawyer did not adequately represent him and that "I kind of went on through this process by myself."

As to his third claim, that he was not provided with newspapers or magazines while incarcerated in the Washington Parish Jail, Ellis testified that at one time he was receiving newspapers in the jail, but they were subsequently taken away for no reason. He testified that he was without newspapers for about six months. His written submissions specifically alleged that he asked Warden Topps in November 2008 "to be allowed to subscribe to The Times Picayune to keep up with the local news of his residential location" and "to see what is happening in the free world." Id. at ¶ 4.

Concerning his fourth claim of inadequate mail service, Ellis alleged in his written complaint that "Sheriff Crowe refuses to authorize his Jail Deputy staff to go to the Post Office to pick up mail for the Jail population every day. Mail does not come to the Jail because the sheriff established a post office box in the Town of Franklinton at the post office. However, mail should be check [sic] at the P.O. box every day . . . ." He alleged that, because mail is not picked up and delivered to inmates daily, "inmates receive court

4

decisions late and have a problem meeting legal deadlines in the Court." Id. at ¶ 5. Ellis testified that jail staff would let mail stack up in the jail and wait for days or up to a week before the mail would actually be delivered to the inmates. He testified that delays occurred in the delivery of his legal mail, although he ultimately received his mail. Asked how the delays in mail delivery injured him, Ellis stated that he sometimes received mail from his lawyer after he had already gone to court, when "I didn't need them anymore."

As to his fifth claim, that he received inadequate outdoor recreation, Ellis's written submissions alleged that "Warden Topps treat [sic] his inmates like caged animals by not providing them at least yard recreation twice a week." Id. at ¶ 6. He testified that he was permitted to go outside for recreation once or twice a month at most. Asked what injuries he suffered as a result of his lack of outdoor recreation, he could identify none.

Concerning his claim that conditions were unsanitary in the jail, Ellis testified that he suffered a staph infection in the jail because of the unsanitary conditions. Asked to describe the conditions, he testified: "You could just walk in there and see . . . it was a nasty place. . . . they don't keep it up like they should. . . . they don't keep it clean like it should be cleaned, like a place that's like your house. . . . It's overcrowded." He could not be more specific, except to say that "it's just straight filthy." Asked how often the jail was cleaned, he said, "Whenever they sent us stuff back there to clean it, and it wasn't the right stuff. . . . I don't know what it was they were cleaning with. It wasn't

the right stuff, I know that. It didn't keep down no [sic] kind of infections or none of that." He alleged that he contracted a staph infection as a result of the unsanitary conditions.

Ellis's written submissions concerning the allegedly unconstitutional conditions of his confinement were only marginally more specific. He asserted that "[t]he lights in the cells do not work and the light fixtures [are] falling from the ceilings. There is black mold on the walls in each cell and Warden Topps does not provide the proper cleaning material to keep staph infection from breaking out all over the jail." Id. at ¶ 7.

Ellis also alleged as a separate but related additional claim that he was denied proper medical care while incarcerated in the Washington Parish Jail, especially for his staph infection allegedly resulting from the unsanitary conditions. Specifically, his written submissions alleged that he had two boils under his arms and one on his right hip "and was forced to suffer for several weeks" as a result of inadequate medical attention.

Ellis testified that he showed jail staffers the infection in his hip and underarms during February 2009 and requested medical treatment. Asked if he received medical treatment, he did not answer, except to say that he used tobacco and treated the condition himself. He conceded that he received Tylenol and ibuprofen from jail staff in response to his requests, but said that "it really didn't even help." He said the staph infection cleared up within three weeks. Ellis said he was not seen by a nurse or doctor at the jail for this condition. He acknowledged that he received medicine for his high blood

pressure during his stay in the jail, but he stated that he did not receive anything for his self-diagnosed and self-treated staph infection.

As to his claim of racial discrimination in the selection of jail trustees, Ellis testified that only two of 15 or 20 trustees at the jail were black, and the remainder were white. In his written submissions, he stated that 85 percent of the jail's inmate population is African-American. He alleged that defendant Warden Cummings is in charge of trustee selection at the jail and that the warden tells black inmates that they must be sentenced to Department of Corrections jail time before they can be selected as trustees, while the warden does not impose that requirement for white inmates. Id. at ¶ 9. Ellis testified that, if he had remained in the Washington Parish Jail instead of being transferred to the Caldwell facility in May 2009, he never would have had a chance to become a trustee. When asked if he had ever asked or applied to become a trustee at the Washington Parish Jail, Ellis said, "no sir," after first stating, "I was thinking about it 'til all this come [sic] about." He explained that trustees at the jail have more freedom than other inmates and more things to do, including "kitchen work, the car wash, other jobs that they had." He said some of the trustees were parole violators like himself. He testified that, although "I imagine" there was a process for the selection of trustees, he did not apply for the process.

As to his final claim, which is similar to his first claim, Ellis testified that defendant Brumfield placed him in lockdown for 21 days in late October to early

November 2008 for no reason.  He said that he had no mattress and was kept in a very small room during that time.  He said he received no writeup or disciplinary hearing. Asked what privileges he lost while in lockdown for this 21-day period, he said, "no phone, no mattress, you stay in this little room with nothing," and he was never told why he was placed there.  He said he could not leave the room, even for a shower, and could not watch television or go outdoors.

The medical records provided to the court by defendants in response to my order, Record Doc. Nos. 22 and 23, do not reflect any medical treatment at the Washington Parish Jail specifically for a staph infection or other, similar condition.  The medical records indicate that Ellis was treated for high blood pressure with medication and regular monitoring.

## ANALYSIS

I.  STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's

testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, all but one of the claims asserted in plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. With the exception of his claim asserting baseless denial of his right to receive newspapers for a six-month period (which requires further proceedings), plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

## II.    "CORPORAL PUNISHMENT" / IMPROPER DISCIPLINARY ACTION

Ellis's written submissions and oral testimony establish that what he alleges was "corporal punishment" actually had no "corporal" component.  Instead, his complaint is that he was disciplined unjustly by being placed in "lockdown" for about one and one-half weeks for the bad conduct of other inmates, in which he did not participate.  He makes a similar claim for a later, separate 21-day period, during which he was placed in lockdown by defendant Brumfield.

The conditions of Ellis's confinement in lockdown, including the denial of privileges described in his testimony, do not establish any violation of his constitutional rights.  In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in

---

[1]    Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

lockdown or other denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). In <u>Sandin</u>, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (citations omitted). Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit in <u>Madison</u> held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in

the conditions of his confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord</u> <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000). In <u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do <u>not</u> represent the type of atypical, significant deprivation in which a state might create a liberty interest. <u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768.

Examples of prison hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital and extension of the prisoner's sentence for his underlying criminal conviction. <u>Sandin</u>, 515 U.S. at 484. In addition, the Supreme Court recently held that solitary confinement in a "Supermax" facility imposes an atypical and significant hardship that creates a liberty interest in avoiding such a placement when all of the following factors are taken together: almost all human contact, including cell to cell conversation, is prohibited; the light is on for 24 hours per day; exercise is for 1 hour per day, but only in a small indoor room; the placement is indefinite and is reviewed just annually; <u>and</u> placement disqualifies an otherwise eligible inmate from parole consideration. <u>Wilkinson</u>, 545 U.S. at 223-24.

In the instant case, Ellis alleges that prison officials provided him with no reason or process in placing him in lockdown for about one and one-half weeks on one occasion

and 21 days on another. However, <u>Sandin</u> makes clear that no particular process is required, unless something more than a mere change in condition of confinement occurs. <u>Madison</u>, 104 F.3d at 768. On the contrary, Ellis's own testimony establishes that his stay in lockdown deprived him only of certain limited prison privileges, including television, telephone, shower, recreation and mattress restrictions, without any "atypical, significant deprivation" that might rise to the level of constitutional concerns, such as loss of good time credits. <u>See</u> <u>Hernandez</u>, 522 F.3d at 563 (distinguishing the "extreme conditions" described in <u>Wilkinson</u> and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); <u>Dixon</u>, 2005 WL 17382, at *1 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); <u>Payne v. Dretke</u>, 80 Fed. Appx. 314, 2003 WL 22367564, at *1 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

Ellis has failed to make any showing that the time spent in lockdown extended his total time in prison or otherwise resulted in atypical, significant hardships. <u>Sandin</u>, 515 U.S. at 484; <u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768. As the record stands, nothing about Ellis's two (2) brief stays in lockdown resulted in a violation of his due process or other constitutional rights.

III.    <u>LAW LIBRARY</u>

Plaintiff contends that the law library at the Washington Parish jail is inadequate and outdated and that a legal assistant or some other person should be in the library to help the inmates use it. Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977); <u>Dickinson v. TX, Fort Bend County</u>, 325 Fed. Appx. 389, 2009 WL 1407935, at *1 (5th Cir. 2009); <u>Sandoval v. Johns</u>, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. 2001); <u>McDonald v. Steward</u>, 132 F.3d 225, 230 (5th Cir. 1998); <u>Degrate v. Godwin</u>, 84 F.3d 768, 768-69 (5th Cir. 1996). A prison need not provide its inmates with a library that results in the best possible access to the courts, but must provide a library or other assistance that meets minimum constitutional standards of providing access to the courts. <u>Petrick v. Maynard</u>, 11 F.3d 991, 994 (10th Cir. 1993); <u>Johnson v. Moore</u>, 948 F.2d 517, 521 (9th Cir. 1991); <u>Hargrove v. Henderson</u>, No. 95-1601-CIV-T-17A, 1996 WL 467516, at *10 (M.D. Fla. Aug. 13, 1996), <u>aff'd</u>, 124 F.3d 221 (11th Cir. 1997); <u>United States v. Janis</u>, 820 F. Supp. 512, 515-16 (S.D. Cal. 1992), <u>aff'd</u>, 46 F.3d 1147 (9th Cir. 1995).

However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has <u>not</u> extended this right to encompass more than <u>the ability of an inmate to prepare and transmit a necessary legal document to a court</u>." <u>Vaccaro v. United States</u>, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997)

(quotation omitted) (emphasis added); accord Norton, 122 F.3d at 290; Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996).

Significantly, to state a claim that his constitutional right of access to the courts was violated, Ellis must demonstrate that his position as a litigant was actually prejudiced. Lewis v. Casey, 518 U.S. 343, 356 (1996); Cochran v. Baldwin, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); Smith v. Polunsky, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir. 2000); Eason, 73 F.3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351.

Ellis wholly fails to establish the essential elements of a First Amendment claim detailed above, either in his complaint or his testimony, in the following ways. First, Ellis testified that he needed access to a law library or other legal assistance at the prison to research the penalties imposed for the crime he had committed and for other information concerning the criminal case against him. Ellis acknowledged, however, that he was represented by an attorney in his criminal case. Under these circumstances, plaintiff's right of access to the courts, as guaranteed by the Constitution and interpreted by Bounds, was clearly satisfied by his representation by counsel in his criminal proceedings. Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998); Schrier v. Halford, 60 F.3d 1309, 1313-14 (8th Cir. 1995); Mackin v. Carpenter, 988 F.2d 1212,

1993 WL 82306, at *3 (5th Cir. 1993); <u>Mann v. Smith</u>, 796 F.2d 79, 83 (5th Cir. 1986); <u>Morrow v. Harwell</u>, 768 F.2d 619, 623 (5th Cir. 1985).

As to the instant civil action, it is clear that plaintiff has submitted materials sufficient to prosecute his civil case in this court. His case has proceeded through a <u>Spears</u> hearing and is now being considered on its merits. Therefore, it must be concluded that his First Amendment right, which encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court, <u>Vaccaro</u>, 1997 WL 574977, at *1; <u>Norton</u>, 122 F.3d at 290; <u>Eason</u>, 73 F.3d at 1328, was not violated.

In addition, it is clear that no actual legal prejudice to Ellis's position as a litigant of the type required by <u>Lewis</u> was caused by any action or omission of the defendants. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." <u>Hart v. O'Brien</u>, 127 F.3d 424, 446 (5th Cir. 1997), <u>abrogated in part on other grounds as recognized in</u> <u>Spivey v. Robertson</u>, 197 F.3d 772 (5th Cir. 1999); <u>accord</u> <u>Brown v. Bryan County</u>, 219 F.3d 450, 457 (5th Cir. 2000). In <u>Lewis</u>, the Supreme Court made clear that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the <u>Lewis</u> case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file <u>non</u>frivolous legal claims challenging their convictions or conditions of confinement." <u>Lewis</u>, 518 U.S. at 356 (emphasis added).

As noted above, a prisoner's First Amendment right of access to the courts encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court. Ellis conceded in his testimony that he was represented by counsel in his criminal proceedings and that he has had access to a law library at the jail. It is also clear that he has been able to file all necessary pleadings in the instant civil case.

For all of the forgoing reasons, Ellis's claim concerning inadequate access to a law library at the jail is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

IV.   NEWSPAPERS, MAGAZINES

As to plaintiff's claim that he was not provided with newspapers or magazines while incarcerated in the Washington Parish Jail, Ellis testified that he was receiving newspapers at one time, but that they were subsequently taken away for no reason. He testified that he was deprived of newspapers for about six months. His written submissions specifically alleged that he asked Warden Topps in November 2008 "to be allowed to subscribe to The Times Picayune to keep up with the local news of his residential location" and "to see what is happening in the free world."

In Beard v. Banks, 548 U.S. 521 (2006), the United States Supreme Court considered an inmate's First Amendment challenge to a prison regulation restricting his access to newspapers, magazines and photographs. The Court reiterated its holdings and

the standards previously expressed in <u>Turner v. Safley</u>, 482 U.S. 78 (1987), and <u>Overton v. Bazzetta</u>, 539 U.S. 126 (2003), by again recognizing

> that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment . . . But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. . . . As <u>Overton</u> (summarizing pre-<u>Turner</u> case law) pointed out, courts owe substantial deference to the professional judgment of prison administrators. And <u>Turner</u> reconciled these principles by holding that restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives . . . .

<u>Beard</u>, 548 U.S. at 528 (quotation and citations omitted). The <u>Beard</u> Court applied the same standard it had previously set in <u>Turner</u> in stating that four factors must be evaluated in determining the constitutionality of a prison practice or regulation that deprives or restricts a prisoner's First Amendment right of access to newspapers:

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally? And, fourth, are ready alternatives for furthering the governmental interest available?

<u>Id.</u> at 529 (quotations and citations omitted).

In a recent decision addressing the First Amendment rights of prisoners, the Fifth Circuit noted that the Supreme Court in <u>Beard</u> "acknowledged the particular importance of the first factor, explaining that in some cases the second, third, and fourth factors can

'add little, one way or another, to the first factor's basic logical rationale.'" <u>Morgan v.</u>

<u>Quarterman</u>, 570 F.3d 663, 666 (5th Cir. 2009) (quoting <u>Beard</u>, 548 U.S. at 532).

Thus, prison restrictions on an inmate's access to newspapers and other publications do not violate his First Amendment rights if the restrictions are reasonably related to legitimate penological interests. <u>Beard</u>, 548 U.S. at 530; <u>Thornburgh v.</u> <u>Abbott</u>, 490 U.S. 401, 413 (1989); <u>Turner</u>, 482 U.S. at 89; <u>Morgan</u>, 570 F.3d at 666. In the instant case, at this early stage of the proceedings, the record contains only plaintiff's allegation, which must be accepted as true for screening and Rule 12(b)(6) purposes, that he was deprived of access to newspapers for a six-month period for <u>no</u> reason at all. The validity and rationality of defendants' alleged actions in this regard and the legitimacy of the governmental interest supporting those actions are the keys to evaluating this claim. In their answer, defendants have pled that their actions were "done in good faith," were "reasonable, justified and legally permissible," and that they are "protected by . . . qualified immunity." Record Doc. No. 16 (Answer, Sixth, Eight and Ninth Defenses). However, proof concerning the legitimate penological reasons and/or interests justifying defendants' alleged prohibition on plaintiff's access to newspapers for a six-month period is required to evaluate this claim, which cannot be dismissed as legally frivolous at this time.

V.    <u>MAIL</u>

In his written submissions, Ellis alleged that "Sheriff Crowe refuses to authorize his Jail Deputy staff to go to the Post Office to pick up mail for the Jail population every day.  Mail does not come [directly] to the Jail because the sheriff established a post office box in the Town of Franklinton at the post office.  However, mail should be check[ed] at the P.O. Box every day because this is one of the inmates' constitutional rights to have mail flow through the jail on weekdays."  Record Doc. No. 1 (Attachment to Form Complaint at ¶ 5).  He alleged that, because mail is <u>not</u> picked up from the post office and delivered to inmates <u>daily</u>, "inmates receive court decisions late and have a problem meeting legal deadlines in the Court."  <u>Id.</u>

During the <u>Spears</u> hearing, Ellis testified that jail personnel would let mail stack up in the jail and would delay for days or up to a week before the mail would actually be delivered.  He testified that delays occurred in the delivery of his legal mail, although he ultimately received it.  Asked how the delays in mail delivery injured him, Ellis stated that sometimes he received mail from his lawyer after he had already gone to court, at a time when "I didn't need [the mail] anymore."

The Fifth Circuit has held that prison practices or restrictions concerning prisoner mail implicate two distinct but intertwined constitutional rights:  (1) the right of access to the courts, which the Supreme Court has indicated lies in both the Due Process Clause and the First Amendment, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 575-76 (1974), and (2) the

right to freedom of speech guaranteed by the First Amendment.  Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993); Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993).  Specifically, the right of access to the courts is implicated only when the mail in question is legal in nature, while the right to free speech is relevant to claims involving both legal and non-legal mail.

Regardless what rights are implicated, however, it is clear that prisoners' constitutional rights with respect to mail are not absolute.  Like the right to receive newspapers or other publications discussed above, a prison practice or regulation may permissibly interfere with an inmate's mail, including his legal mail, if the practice is "'reasonably related to a legitimate penological interest.'"  Morgan, 570 F.3d at 666 (quoting Brewer, 3 F.3d at 824) (citing Turner, 482 U.S. at 89); see also Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (reasonableness standard applies to challenges to regulations as well as to actions taken by a prison official).

To the extent that Ellis is complaining that alleged delays in mail delivery interfered with his constitutional right of access to the courts, it is well established that prisoners have such a constitutional right.  Bounds, 430 U.S. at 821.  However, just as with plaintiff's claim that an inadequate law library unconstitutionally impeded his access to the courts, it is clear that "the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal

document to a court." <u>Vaccaro</u>, 1997 WL 574977, at *1 (quotation omitted) (emphasis added); <u>accord</u> <u>Norton</u>, 122 F.3d at 290; <u>Eason</u>, 73 F.3d at 1328.

As previously discussed, to state a claim for violation of his right of access to the courts, Ellis must demonstrate that his position as a litigant was actually prejudiced. <u>Lewis</u>, 518 U.S. at 356; <u>Cochran</u>, 2006 WL 2418945, at *1; <u>Smith</u>, 2000 WL 1468717, at *1; <u>Eason</u>, 73 F.3d at 1328. The inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351. In <u>Lewis</u>, the Supreme Court made clear that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the <u>Lewis</u> case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file <u>non</u>frivolous legal claims challenging their convictions or conditions of confinement." <u>Id.</u> at 356 (emphasis added).

In this case, Ellis's written submissions, even as expanded upon by his <u>Spears</u> testimony, fail to state a cognizable Section 1983 claim for violation of either his free speech rights or his right of access to the courts. As to his free speech rights, Ellis does <u>not</u> allege deprivation of mail delivery. Instead, he alleges only <u>delay</u> in the delivery of his mail, sometimes for a period of days, sometimes for as long as a week. In other contexts, the courts have found that mere delay in the delivery even of essential services to prisoners does not rise to the level of a constitutional violation. Mere negligent delay

in processing prisoner mail does not violate the Constitution. See Richardson v. McDonnell, 841 F.2d 120, 121-22 (5th Cir. 1988) (delay in processing a prisoner's mail will not offend the Constitution if the prisoner cannot show that the delay resulted in legal prejudice); Walker, 4 F.3d at 412 (to state a claim, plaintiff must allege that his position as a litigant was prejudiced by mail tampering). Experiencing a slight delay in the receipt of legal mail and the opening of legal mail outside of plaintiff's presence do not, standing alone, constitute a constitutional violation. Richardson, 841 F.2d at 122; Brewer, 3 F.3d at 825. In the everyday lives of unincarcerated citizens, short delays in mail delivery are common occurrences. Thus, the delays in mail delivery alleged by Ellis while in prison do not state any violation of his First Amendment free speech rights, when he was not deprived of mail delivery altogether for any extended period of time. In this regard, his First Amendment claim concerning mail delivery differs markedly from his First Amendment claim concerning access to newspapers and other publications.

As to his First Amendment right of access to the courts claim, Ellis fails completely to allege actual injury to his position as a litigant, as required in Lewis. The alleged delay in receiving legal mail had no effect on plaintiff's court proceedings, and his access to the courts was not prejudiced in any way. His testimony established that he was accompanied by counsel to the criminal proceedings that were the subject of his delayed legal mail. It is clear from his testimony that he suffered no actual injury or legal

24

prejudice of any kind resulting from the alleged mail delays. Accordingly, to the extent Ellis claims that the delay in receiving mail interfered with his access to the courts, his claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

For the foregoing reasons, plaintiff's mail claim is legally frivolous in all respects and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

VI.    OUTDOOR RECREATION

Ellis alleged in his written submissions that "Warden Topps treat [sic] his inmates like caged animals by not providing them at least yard recreation twice a week." Record Doc. No. 1 (Attachment to Complaint at ¶ 6). He further asserted that "there is no yard recreation for inmates . . . for months at a time." Record Doc. No. 18 at ¶ 3(E). He testified that he was permitted to go outside for recreation once or twice a month at most while incarcerated at the Washington Parish Jail. Plaintiff further testified that he was not allowed to go outdoors during the 21 days that he was in disciplinary lockdown in late October to early November 2008. This complaint is legally frivolous and wholly fails to state a claim.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a <u>per se</u> constitutional violation." <u>Lewis v. Smith</u>, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (citing <u>Stewart v. Winter</u>, 669

F.2d 328, 336 n.19 (5th Cir. 1982); <u>Miller v. Carson</u>, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); <u>accord</u> <u>Sampson v. Corrections Corp.</u>, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (Drell, J.) (citing <u>Smith v. Boyd</u>, 945 F.2d 1041, 1043 (8th Cir. 1991); <u>Beck v. Lynaugh</u>, 842 F.2d 757, 762 (5th Cir. 1988); <u>Lato v. Attorney Gen.</u>, 773 F. Supp. 973, 978 (W.D. Tex. 1991)). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." <u>Lewis</u>, 2001 WL 1485821, at *1 (citing <u>Ruiz v. Estelle</u>, 679 F.2d 1115, 1152 (5th Cir.), <u>amended in part, vacated in part on other grounds</u>, 688 F.2d 266 (5th Cir. 1982)). Thus, to succeed on a claim under Section 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." <u>Ruiz</u>, 679 F.2d at 1152; <u>accord</u> <u>Delaney v. DeTella</u>, 256 F.3d 679, 684 (7th Cir. 2001); <u>Ordaz v. Lynaugh</u>, 20 F.3d 1171, 1994 WL 144882, at *4 (5th Cir. Apr. 15, 1994); <u>Green v. Ferrell</u>, 801 F.2d 765, 771 (5th Cir. 1986).

To state a claim under 42 U.S.C. § 1983, plaintiff must also allege an actual injury <u>caused by</u> defendants' acts. <u>See</u> <u>Brock v. Sparkman</u>, 101 Fed. Appx. 430, 2004 WL 1368923, at *1 (5th Cir. 2004) (citing <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); <u>Jackson v. Culbertson</u>, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no

injury); <u>Oliver v. Collins</u>, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); <u>Auster Oil & Gas, Inc. v. Stream</u>, 835 F.2d 597, 602 (5th Cir. 1988) (citing <u>Memphis Cmty. Sch. Dist.</u>, 477 U.S. at 307) (Section 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); <u>Jefferson v. City of Hazelhurst</u>, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a claim under Section 1983, plaintiff must plead "a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.").

Ellis's written submissions and testimony fail to establish any constitutional violation. He identified no particular injuries suffered as a result of lack of outdoor recreation. He conceded that he was permitted some limited outdoor recreation. Ellis cannot show either that he was totally deprived of outdoor recreation for any significant time period or that he suffered any physical injury or violation of his constitutional rights of any kind <u>as a result</u> of the alleged limitations on outdoor exercise. <u>See</u> <u>Hernandez</u>, 522 F.3d at 560 (Inmate who alleged that he was deprived of outdoor and out-of-cell exercise for thirteen months while in lockdown and that he suffered muscle atrophy, stiffness, loss of range of motion, and depression failed to show either that he was placed at substantial risk of serious harm or that he suffered a serious illness or injury sufficient to constitute an Eighth Amendment violation.); <u>Ordaz</u>, 1994 WL 144882, at *4 (Plaintiff

failed to state a constitutional violation resulting from denial of recreation when he failed to allege health impairment or physical injury.). Thus, Ellis fails to state a cognizable Section 1983 claim.

VII.    UNSANITARY CONDITIONS

As to the conditions of his confinement, Ellis alleged in his written submissions that "the lights in the cells do not work and the light fixtures [are] falling from the ceilings. There is black mold on the walls . . . and Warden Topps does not provide the proper cleaning material to keep staph infection from breaking out . . . ." Record Doc. No. 1 (Attachment to Complaint at ¶ 7). Plaintiff alleged that he had contracted a staph infection "because of the filthy conditions." Id. During his testimony, he provided no specifics as to the alleged unsanitary conditions, except to allege generally that the jail was "filthy" and not kept "clean like it should be cleaned." Although Ellis conceded that cleaning occurred and that cleaning supplies were regularly provided to the inmates, he alleged hat the supplied cleaning materials were not "the right stuff."

Ellis was a pretrial detainee awaiting parole revocation for the time period of about seven (7) months about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth,

74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999). In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or <u>Spears</u> testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), applies. <u>Olabisiomotosho</u>, 185 F.3d at 526; <u>Tamez v. Manthey</u>, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Ellis's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for

constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Ellis's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Ellis alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions. Even his alleged "staph infection," which is addressed more fully below, did not pose a substantial risk of serious harm rising to the level of a constitutional violation. See Brown v. Pierce, No. 05-1322, 2008 WL 619288, at *5 (C.D. Ill. Mar. 4, 2008) (citing Mase v. Henry County Jail, No. 7:06CV00627, 2006 WL 3091046, at *1 (W.D. Va. Oct. 27, 2006); Hamm v. Riley, No. 0:05-2046-HMH-BM, 2007 WL 1377611, at *2 (D.S.C. May 7, 2007); Holder v. Hebert, No. 07-1206, 2007 WL 4299996, at *3 (W.D. La. Nov. 8, 2007); Lives v. Camden Co. Dep't of Corr., 225 F. Supp. 2d 450 (D.N.J. 2002)) ("[S]everal courts have held that a rash resulting from cell conditions is a de minimus [sic] injury that does not rise to the level of a constitutional violation or that some evidence linking the conditions and the rash must be presented.").

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

None of Ellis's allegations about the conditions at the jail establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Eady v. Head, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Moreover, Ellis cannot establish "deliberate indifference." He concedes that cleaning efforts were made and that cleaning supplies were provided to him. He merely disagrees that these efforts and supplies were "the right stuff." See Tallmore v. Hebert,

No. 07-1220, 2008 WL 2597939, at *2 (W.D. La. May 28, 2008) (Hill, M.J.) (citing Davis, 157 F.3d at 1006; Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir. 1983)) ("Clearly, prisons need not be completely sanitized or as clean as one's home might be . . . . There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials.").

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez, 522 F.3d at 560.

For all of the foregoing reasons, Ellis's complaint about the conditions of his confinement falls short of stating a constitutional violation, and this claim must also be dismissed.

VIII.  MEDICAL CARE

Ellis also alleged that he was denied proper medical care while incarcerated in the jail, particularly for a staph infection that lasted about three weeks, allegedly as a result of the unsanitary conditions.

Ellis was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in Hare, 74 F.3d at 633, it appeared that prison

officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, as previously stated, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission, and the same deliberate indifference standard enunciated in Estelle, 429 U.S. at 104, and previously explained as applicable to plaintiff's conditions of confinement claim will also apply to his medical care claim. Tamez, 2009 WL 4324808, at *4; Hare, 74 F.3d at 650.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

As with conditions of confinement claims, an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment with regard to medical care. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

Again, "the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, No. 09-40223, 2009 WL 4279851, at *2 (5th Cir. Dec. 1, 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 2009 WL 4324808, at *4 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, No. 08-40685, 2009 WL 3738532, at *3 (5th Cir. Nov. 10, 2009) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

Thus,

> "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard</u>, 114 F.3d at 551 (quoting <u>Board of County Comm'rs</u>, 520 U.S. at 410) (other quotations omitted)) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. <u>See</u> <u>Tamez</u>, 2009 WL 4324808, at *4 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Ellis must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Ellis's testimony negates any inference that defendants acted with deliberate indifference to his serious medical needs. Initially, it cannot be concluded that the conditions he described, including some sort of rash or skin irritation lasting three weeks before it cleared up through his use of tobacco, presented a serious medical need that

posed a substantial risk of harm during his incarceration at the jail. These complaints do not rise to the level of a <u>serious</u> medical need for purposes of constitutional analysis.

It is clear from plaintiff's testimony that he did not suffer "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. <u>See</u> <u>Hill v. Dekalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994) (citing <u>Monmouth County v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); <u>see also</u> <u>Jackson v. Douglas</u>, 270 Fed. Appx. 462, 2008 WL 748652, at *1 (8th Cir. 2008) (boils on plaintiff's arm and chest not an objectively serious medical need); <u>Stepnay v. Goff</u>, 164 Fed. Appx. 767, 2006 WL 182059, at *2 (10th Cir. 2006) (Inmate with staph infection "may not avoid dismissal . . . by merely asserting conclusory allegations that his condition obviously required a doctor's attention because most skin conditions are not intuitively serious."); <u>Tasby v. Cain</u>, 86 Fed. Appx. 745, 2004 WL 243433, at *1 (5th Cir. 2004) (Plaintiff's assertion that he developed a rash from being placed in restraints "does not establish that he suffered 'serious harm.'"); <u>Gonzalez-Reyna v. Ellis</u>, No. 1:09cv522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."). Furthermore, Ellis conceded that he received Ibuprofen and Tylenol and that his "infection" cleared up within three weeks. Under these circumstances, he cannot

state a cognizable Section 1983 claim that defendants were deliberately indifferent to serious medical needs.

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## IX.    RACIAL DISCRIMINATION IN TRUSTEE SELECTION

Ellis alleges that he was denied equal protection because the warden discriminated on the basis of race in the selection of jail trustees. "Inmates have the constitutional right to be free from racial discrimination." Bentley v. Beck, 625 F.2d 70, 71 (5th Cir. 1980).

"To state an equal protection claim, [plaintiff] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination." McKnight v. Eason, 227 Fed. Appx. 356, 2007 WL 1334184, at *1 (5th Cir. 2007) (citation omitted); accord Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007). "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination. Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim." Jebril v. Joslin, No. C-07-436, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); Pedraza v. Meyer, 919 F.2d 317, 318 n.1 (5th Cir. 1990)); accord Jones

v. Castro, No. SA-6-CA-846-NSN, 2007 WL 3396500, at *4-5 (W.D. Tex. Nov. 13, 2007) (citing Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995)).

In the instant case, Ellis has proffered only vague and conclusory allegations, based solely on his personal, subjective belief, that he was similarly situated to white inmates who were trustees at the jail and that Warden Cummings discriminates against African-American inmates generally, and plaintiff particularly, in the assignment of trustee positions. Plaintiff's conclusory allegations are insufficient to state a claim for a violation of his right to equal protection. See Al-Ra'id, 69 F.3d at 32 (conclusory allegations of racial malice insufficient to maintain equal protection claim); Portillo v. Brown, No. 2:07-CV-0031, 2009 WL 1160345, at *2 (N.D. Tex. Apr. 28, 2009) (citing Al-Ra'id, 69 F.3d at 32) (Hispanic inmate's allegations that prison employee called him names, laughed at him and refused to dismiss disciplinary action against him, based on his race, were conclusory and failed to state a claim.); Webber v. Ramos, No. EP-04-CA-426-KC, 2007 WL 1039214, at *6 (W.D. Tex. Mar. 21, 2007) (citing Al-Ra'id, 69 F.3d at 32); Taylor v. Johnson, 257 F.3d 470, 474 (5th Cir. 1995)) (African-American inmate failed to state an equal protection claim with allegations that prison employees discriminated against him based on his race when they removed him from one work assignment, denied him another particular work assignment and denied him the opportunity to file a formal complaint to challenge the work assignments.).

Moreover, Ellis has no constitutional right to a particular status or classification within any prison, including specifically trustee status. The classification of inmates is an administrative function of the prison. Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[2] Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner,

---

[2] Overruled on other grounds by International Woodworkers of Am. v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

532 U.S. 732, 735 (2001). The Fifth Circuit "has continued to hold post-<u>Sandin</u> that an inmate has no protectable liberty interest in his classification." <u>Wilkerson v. Stalder</u>, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing <u>Sandin</u>, 515 U.S. at 472).

Federal courts, including the Fifth Circuit and district courts within it, have repeatedly held that an inmate has no protected liberty interest in becoming a trustee. <u>See, e.g.</u>, <u>Thomas v. Jordan</u>, No. 07-60071, 2008 WL 4649095, at *1 (5th Cir. Oct. 21, 2008) (no constitutionally protected interest implicated by prison officials' failure to classify inmate as trustee, depriving him of opportunity to earn good time credits); <u>Walker v. Buentello</u>, 149 Fed. Appx. 286, 2005 WL 2404748, at *1 (5th Cir. Sept. 30, 2005) (prisoner has no constitutionally cognizable interest in trustee status); <u>Donaldson v. Ducote</u>, 112 Fed. Appx. 329, 331, 2004 WL 2320073, at *2 (5th Cir. Oct. 12, 2004) (no constitutionally cognizable liberty interest in transfer from trustee status to working cellblock); <u>Jackson v. Harrison</u>, No. 09-0742, 2009 WL 2708109, at *2 (W.D. La. Aug. 26, 2009) (James, J.) (prisoner's claim based on denial of trustee status dismissed as legally frivolous); <u>Pulliam v. Epps</u>, No. 4:08CV135-M-D, 2008 WL 4911812, at *1 (N.D. Miss. Nov. 13, 2008) (same); <u>Inmates, Washington County Jail v. England</u>, 516 F. Supp. 132, 141 (E.D. Tenn. 1980), <u>aff'd</u>, 659 F.2d 1081 (6th Cir. 1981) (both conferral and removal of trustee status are within discretion of jail administrators).

In this case, Ellis conceded in his testimony that he never asked or applied to become a trustee at the Washington Parish jail. "[C]ausation is an element of a section

1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart, 127 F.3d at 446 ; accord Brown, 219 F.3d at 457. Thus, even if his claim of racial discrimination in the selection of trustees could constitute a violation of Section 1983, it is clear that Ellis himself was not subjected to any discriminatory process because he was not involved in the selection process.

Plaintiff's complaint in this case about race discrimination in the selection of jail trustees advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that all claims in plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), except his claim asserting an unconstitutional denial of his right to receive newspapers for a six-month period, which requires further proceedings.

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____18th_____ day of December, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.